Thank you, Your Honor. Thank you very much. And that brings us to our final case of the morning, Appeal No. 24-1212, Selco Partnership v. Deer District in the City of Milwaukee. And Mr. Murphy, we welcome you to the podium. Good morning, Your Honors, and may it please the Court. My name is Dan Murphy. I represent Deer District LLC. Deer District asks this Court to reverse the District Court's decision ordering the City of Milwaukee to issue permits to Verizon so that Verizon can install utility poles and small cell devices in the plaza that Deer District... I'm going to ask a very practical question. Sure. The City has an appeal. Correct. And the permits have been issued. Correct. And the cell poles are up and running. So what relief is Deer District seeking? Invalidation of the permits, which will require Verizon to remove the poles. And you think that you have standing to raise this claim? Yes, Your Honor. Despite the City of Milwaukee's lack of an appeal here? Yes, Your Honor. I guess let me take that in two different ways. To the extent Your Honor is looking to the preemption argument by Verizon, I can address that, or I can address the fact that we're merely trying to enforce our rights under the lease with the City. That was the reason that we intervened in the District Court action. We asserted those rights there. We maintained then, as now, that they... Right, right, but the TCA holding is there, and... Correct. Yeah. So there's no authority for the proposition that the TCA violation could trump private parties' property rights. And such a result is inconsistent with the purpose of the TCA. The TCA left the siting of small cells and utility poles, or installation of small cells, to the states. Wisconsin did that. It enacted Section 660414, which clearly states that those poles may only be installed in rights of way. And under Subsection 8 of that statute, it expressly says that private property cannot be the location of any small cells. And so the combination of those two, Your Honor, preserve our ability to enforce our rights under the lease, notwithstanding the City's failure to support its denial of the permit applications with substantial evidence, which was the only violation of the TCA that the District Court found. So there's no substantive conflict between the violation of the TCA and our ability to enforce our rights under the lease. And I would also offer the hypothetical that we did in our briefing, Your Honor, that the result advocated by Verizon, the instance possible by your question, is that a city could mistakenly approve the installation of a small cell in a private residence. And if it only belatedly determines that that is what it did, that it mistook the location of the small cell, under Verizon's view, that would mean that there is no recourse for the private property owner. Again, that's inconsistent with the balance struck under the TCA. It's inconsistent with the text of 660414. Let me add to Judge Maldonado's question. Why did Deer District not seek a stay pending appeal earlier in the litigation? A number of reasons, Your Honor. I guess the most practical one is we believe that we do have standing to have them removed over time. We believe we've preserved our ability to pursue this relief at this point, which will address our broader concern, Your Honor, which is Verizon is, of course, not the only wireless provider. It's not the only utility provider. And if others seek to do what Verizon did in this case, that will not only erode and... But why not address the issue at the moment the District Court says the city can issue these permits? And the city has to do it immediately. Time's running out. I guess, Your Honor, for the practical reason of we had filed an appeal and sought to pursue that process. I don't think that the installation of the poles had such an immediately disastrous effect to the property that there wasn't that concern. They can be removed. It's really preserving our rights under the lease. That's our main concern. And also to avoid the consequences of the District Court's decision in interpreting Section 660414 so broadly. Okay. Now, you talked about inconsistencies earlier. That idea. We have Ogden in the Third Circuit, which cautions against allowing an end run against the TCA, okay? By elevating zoning authority, this, quote, zoning authority over congressional policy, end quote. And then you've got the Sixth Circuit in T-Mobile, similarly saying it could affirm a violation of the TCA despite the presence of state laws. So tell us how this case is different from Ogden and T-Mobile. Certainly. Ogden, so first of all, in both cases, it was an appeal by the municipality regarding the TCA violation. So that's one distinction. And that relates to the other distinctions, which are in Ogden the... How does that distinction help you? So that distinction helps me, Your Honor, because I'm not appealing the TCA violation. I'm not saying that the city provided substantial evidence and I don't need to prove that to this court in order to prevail. What I need to show is that my client holds the rights to control commercial activity in the plaza, improvement of the plaza, and use of the plaza. But the injunction was issued under the TCA, right? Against the city. So what happens if we were to rule for you? I mean, I'm just not getting this from a procedural standpoint and from a standing issue. You know, the city chose not to join you in this appeal, and they're going to be bound by that injunction, you know, even if we were to rule for you on your property rights arguments. So it feels very advisory to me. And I'm concerned about standing and redressability of what you're asking us without the city of Milwaukee next to you. So respectfully, Your Honor, the district court put the cart before the horse. Before the TCA could apply, it needed to find that the site proposed for the permit was a permissible location for the poles to be installed. That's the balance between the TCA and the state legislature's enactment of 660414. The district court didn't do that. It looked to the TCA, found a violation of the procedural requirements of the TCA, and I will discuss at some point the errors in the court's analysis of whether or not the plaza qualifies as a right-of-way. But to your point, and to the point about why Ogden and T-Mobile are inapplicable here, it's because we are not alleging that our property rights make it that the substantial evidence existed, right? We're not saying that, we're not arguing anyways, that the city did not violate the TCA. What we're saying is the TCA didn't apply because it is our property rights, and our property rights make clear that this was never a site that could be developed for small cells. Could you, would the argument change if there was a finding that there was no, that the plaza is not a right-of-way? And I'm looking at that Wisconsin statute in particular, similar property, that this plaza would not qualify under that Wisconsin statute to be a right-of-way. I want to make sure I understand your question. Are you saying would my argument be different if the plaza is not a right-of-way? So I guess if the plaza is not, that is what I'm arguing, if the plaza is not a right-of-way, then the TCA doesn't apply. It's not a site available for small cell development. So the application for a permit there fails under that step before you even get into the question of whether the city appropriately evaluated. That's what I meant. I was trying to give you a softball so we can move to the next issue. Sure, I appreciate that, Your Honor. In regards to the right-of-way. I think I'll stop there. Thank you. You're welcome. Mr. Ruck. Good afternoon, Your Honors, and may it please the Court. My name is Jameet Ruck, and I represent Celco Partnership doing business as Horizon Wireless. The district court's ruling that Horizon Wireless violated the Communications Act, which the city did not appeal, and Deer District does not challenge on appeal, forecloses Deer District's arguments on appeal that the city lacked authority to grant its permits. The district court properly found that this argument was untimely because it fell after the time frame that federal law mandates for a written decision. Now if the city had... Is there any support for that? Sorry, Your Honor, what's the... Is there any support? I just want to acknowledge the federal regulation that says there's a 90-day shot clock, and so... I understand the shot clock ran. Is there any support for your argument this morning that that would have allowed us not to be able to consider their argument that came after the shot clock? Yes, Your Honor. So Deer District has no greater rights than the city when it comes to defending its... What's your law that supports that proposition? That's my question. Yes, Your Honor. The two cases this morning, Ogden and T-Mobile, also the national case in the First Circuit, those all are analogous cases, but they reject attempts to defend a permit denial on grounds that were not presented on a timely basis. But those cases don't address untimeliness resulting from supplementing reasons, okay? So do you... Does the FCC have other courts treated supplementing, supplementation, like what's happened here, like substituting a missed deadline? Your Honor, if I'm understanding what you mean by supplementing, I... Here they added a reason. They added a third reason. The city added a third reason for... So, Your Honor, I think if you actually look at the T-Mobile case, there were five issues that were brought in the denial, and then what happens afterwards is the township gives a separate one saying that the specific Michigan zoning law should board a great deal of discretion in considering this permit. So that's what I would say that's similar to what you're saying. It was supplemental. It wasn't found in the initial permit basis, but on appeal, the township tried to use this supplemental basis. And so the Sixth Circuit rejected it and said that it needed to look at what was timely and what were the stated reasons in the initial denial. So, regardless of this whole argument about that their district's foreclosed from raising the argument that the city lacked the authority to grant the permits, I also believe that the district court correctly found that the public plaza has always been and remains a right-of-way in which the city had the authority to grant small-cell permits. It's undisputed that at the time of the lease, the public plaza was a right-of-way. During the trial, both sides, both the city and their district admitted this fact. And so, therefore, the burden is on their district to show that the lease changed the nature of the public plaza. Let's look at that lease, E2, in particular, where E2, dealing with utilities, if we accept the proposition that these were utilities, WCD acknowledged here, Deere, that the owners of the utility facilities could come on to that property for repairs and replacement. And so, where within this language were your clients permitted to come on and put up new small-cell poles? So, Your Honor, several things I would point to. First off, the lease repeatedly, and that's in the recital section C, in 4E1, and I'll read these out. It affirms that this is a right-of-way. So, it's a public right-of-way, and this court should start from the premise that the city, which has police powers, the Seventh Circuit has recognized, and the Supreme Court has recognized that one of the core police powers is the regulation of utilities. So, this is a public right-of-way, and the city has zoning authority, and one of the key aspects of that is the right to grant or deny these type of utility permits. So, the city has that existing authority. This is a public right-of-way. The city holds the right-of-way known as the 4th Street Pedestrian Mall. 4E1 says that WCD acknowledges that the city holds this pedestrian mall as a public right-of-way. I also would point you to Section 17A of the lease, which my friend on the other side doesn't actually, I think, raise or address in the reply brief. And again, it says that because the city holds this public plaza as a public right-of-way, the premises are property tax-exempt. And then the final point that I think that I'd really draw this court's attention to is Section 15B of the lease. And this is a very broad granting or acknowledgement that the city has the authority to grant permits here. So, in 15B, it's titled encumbrances. Is the suggestion then where you're headed that this language in the contract, the city wasn't permitted to even do basically giving away their power? Is that where you're headed? Your Honor, that's an independent basis. We did touch upon that on our brief. And so can I redirect you then back to my question? What do we do with this language in E2? You've moved on to police powers, but I want you to answer my question. Your Honor, so E2, all that it's doing there is just acknowledging existing utility owners' right to be able to access the facilities. It's not granting any new rights there. It has no impact on the city's existing authority to grant or deny permits. And so that's the only function of 4E2. And that's why I think 15B really codifies that understanding because it says the city retains the right to devote portions of these premises for utilities as described herein. And then the other part of the language, which is very powerful, is the city also retains the right to devote portions of the premises for other easements necessary for the public welfare and convenience. So that clearly just reaffirms that the city had the existing authority to grant or deny permits, and nothing in the lease took that authority away. Did you already address Wisconsin's small wireless facility statute, Section 66? So what if we disagree with you and we find that under that statute the Plaza's not a right-of-way? What authority can you point to that the city had to grant that permit? So, Your Honor, I'll address your specific question and then add some more points. So if you disagree that the pedestrian mall is a right-of-way under that small cell statute, which we disagree with, you would then turn to the argument that the city cannot contract away its police powers. So that's addressed in our brief. But both the Supreme Court and the Seventh Circuit have just recognized that granting of utilities is a core police power. The city can't contract away that specific right. And I would also just say that when you look at Section 332 of the Communications Act, it contemplates local and state governments engaged in the review of siting applications. It doesn't say anything about private parties. I also would say that the small cell statute, Your Honor, similarly is addressing local and state actors, government actors, providing review of these small cell facilities. So it has nothing, it's not even contemplating the possibility that a private entity like your district would have the authority to grant or deny permits. But, Your Honor, I also wanted to say that we believe that the other similar property language that the district court found that was a catch-all clearly encompasses the pedestrian mall, the public plaza in this case. Both the pedestrian mall, the definition in Wisconsin law is that it's any street or land for the enjoyment of pedestrians, the sidewalks in Wisconsin law are defined as an area constructed for use of pedestrians. Other similar properties, a broad phrase, it doesn't mean identical. And I also think that it's important to note here, Your Honor, that the small cell statute, its purpose was to facilitate issuance of small cell permits by establishing a consistent and efficient application and permit process because the legislature wanted to facilitate the rollout of small cell technology for higher-speed connectivity. And I can't think of really a better place than this public plaza for why the legislature would have wanted these types of small cell facilities. So the district court, after its trial and hearing testimony from witnesses, in its fact-defining, stated that when the Milwaukee Bucks won the NBA championship several years ago, a bunch of Verizon subscribers, including law enforcement and first responders, experienced connectivity issues. And that's in Supplemental Appendix 53. The legislature enacted the statute to ensure that there was going to be better connectivity for the greater public. And so this is the exact type of place that falls neatly within the other similar property language within the small cell statute, Your Honor. I would just want to end with the final point that the district can't point to a single point or aspect of the lease whereby the city actually contracted away its authority to issue permits for small wireless facilities because that's just an existing right that it did, that it had, and it's undisputed that the public plaza is a right-of-way. Nothing in the lease changes that, and the small cell statute did not impact that existing characteristic of the public plaza. If there are no further questions, thank you. Thank you, Mr. Ruck. Okay, Mr. Murphy, you've got your bottle time left. You can do well with that. Thank you. So I want to start where Verizon just ended. That's accurate. The city did not convey a permitting authority to the Deer District, and that's why the police powers doctrine is totally inapplicable here. It conveyed a parcel of property via leasehold to a private party, something municipalities do all of the time. As a consequence, it lost the ability to permit that area, but that doesn't mean that it was conveyed to Deer District. So police powers do not apply. The references to right-of-way in the lease are true. The Deer District plaza is open to the public. That is the common law sense of a right-of-way, not the sense defined in 66-0414. Turning to the provisions that opposing counsel cited regarding encumbrances, I thought I would read for the court the end of that provision, that the rights reserved to the city in that provision may not unreasonably interfere with Deer District's rights under the lease, which Deer District stepped into WCD's shoes. So there are no provisions in the lease. The other provision cited, 17A, is regarding property tax exemptions. It says nothing about installing additional utilities in the plaza. The references to right-of-way in the lease do not demonstrate that the plaza is a right-of-way for purposes of 66-0414. The enumerated examples in 66-0414 are nothing like a privately controlled pedestrian mall. The legislature knows what a pedestrian mall is. If it wanted to allow Verizon to install small cells in that area, it could have done so. It didn't. Thank you, Your Honors. All right. Well, thank you to both parties. We'll take the case under advisement. And that concludes our session this morning.